MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Appellant, et al.

v.

CHRISTIAN, Appellee, et al.

[Cite as *Michigan Millers Mut. Ins. Co. v. Christian,*
153 Ohio App.3d 299, 2003-Ohio-2455.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–02–27.

Decided May 15, 2003.

300

302

James M. Peters, for appellant, Michigan Millers Mutual Insurance Company.

George A. Lyons, for appellee.

---

WALTERS, Judge.

{¶ 1} Plaintiff-appellant, Michigan Millers Mutual Insurance Company ("Michigan Millers"), and defendants-appellants, Champaign Landmark, Inc. ("Champaign Landmark") and John Minter ("Minter"—collectively, "appellants"), appeal from a Logan County Common Pleas Court judgment entered in favor of defendants-appellees, Rickey Christian ("Christian") and Christian and Son Trucking, Inc. ("C & S Trucking"), and intervening plaintiff-appellee, Cincinnati Insurance Company ("Cincinnati Insurance"—collectively, "appellees"). Appellants argue that appellees' counterclaims were untimely and that the trial court's judgment is against the manifest weight of the evidence. However, it is well established that counterclaims arising from the same transaction or occurrence underlying the original action relate back to the timely commencement of the action. Furthermore, because the record contains competent, credible evidence supporting the trial court's determinations, the judgment is not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.

{¶ 2} On September 2, 1997, Minter was driving a "Big A Sprayer" owned by Champaign Landmark. Minter was on his way to spray a ten-acre field in Logan County near the village of East Liberty. He was driving east on County Road 10 and had just proceeded through an "s" curve when he realized that he had passed the field to be sprayed and needed to turn around. At this point, the road had straightened and eastbound traffic was permitted to pass. When Minter attempted to turn across the westbound lane into a private drive, he collided with a Kenworth dump truck attempting to pass the sprayer. Both vehicles left the roadway and sustained significant damage.

{¶ 3} On August 2, 1999, Michigan Millers filed a complaint, as assignee and subrogee of Champaign Landmark, against Christian and C & S Trucking, asserting that the sprayer was damaged as a result of Christian's negligent operation of the dump truck. Christian and C & S Trucking answered the complaint and asserted counterclaims against Michigan Millers and Minter. Michigan Millers moved to strike the counterclaim, asserting that it could not proceed with a direct claim against the insurance company until obtaining judgment against its insureds and that Minter had not been properly served.

{¶ 4} Cincinnati Insurance then moved to intervene, as assignee and subrogee of C & S Trucking, with negligence claims against Minter and Champaign Landmark. The trial court permitted the intervention in accordance with Civ.R.

24 and Civ.R. 19. Minter and Champaign Landmark were served the complaint and appeared in the action.

{¶ 5} The matter eventually proceeded to trial. The parties stipulated that Michigan Millers paid $99,279.02 for damage to the sprayer, and Cincinnati Insurance paid $32,841.17 for damage to the Kenworth dump truck. Appellants argued that Christian was speeding at the time of the accident and was required to give an audible signal before passing. Appellees asserted that Minter failed to take appropriate steps to assure that he could turn safely before attempting to turn across the passing lane. Upon consideration of the evidence presented, the trial court found that Minter's negligence was the sole cause of the accident. Cincinnati Insurance was awarded $31,841.17 for the damage and repair of the dump truck. Christian and C & S Trucking were awarded $23,425.81 for lost profits and $1,000 for uninsured damages to the truck.

{¶ 6} Appellants appeal the trial court's judgment, presenting six assignments of error for our review. For purposes of logical progression, we have elected to address the assigned errors out of the order in which they were presented. In addition, review of the first and second assignments of error will be consolidated because issues raised therein are interrelated.

### Assignment of Error Number Three

"The Trial Court erred in considering any evidence as to defendants, Rickey Christian and Christian & Sons Trucking, Inc.'s damages, because pursuant to R.C. 3929.06, both parties did not first secure a judgment against Michigan Millers' insureds, John Minter and Champaign Landmark, Inc., prior to directly pursuing their liability carrier, Michigan Millers, for damages. Thus, the trial court erred in awarding any damages to defendants, Rickey Christian and Christian & Sons Trucking, Inc., because their claims for lost profits were not pled against the proper party."

{¶ 7} In their third assignment of error, appellants assert that Christian and C & S Trucking failed to plead any claims against Minter or Champaign Landmark, thereby precluding any cognizable claim against Michigan Millers. Appellants further argue that any claims against Michigan Millers were premature because R.C. 3929.06 precludes direct action against an insurer until final judgment has been entered against its insureds.

### *Claims Against Minter*

{¶ 8} As an initial matter, we address whether Christian and C & S Trucking perfected claims against Minter or Champaign Landmark. Christian and C & S Trucking responded to Michigan Millers' complaint with claims for damages against Michigan Millers and Minter, including property damage and lost profits, asserting that Minter's negligence was the sole and proximate cause of the

accident. While Minter was not properly served the complaint, he and Champaign Landmark were properly served and appeared when Cincinnati Insurance intervened with corresponding property damage claims. Minter entered an initial appearance through his legal representative, who was also Michigan Millers' legal representative, without objecting to the propriety of Christian and C & S Trucking's claims. After completion of discovery, Minter moved for judgment on the pleadings, claiming that he was not a party to the action until he answered the intervening complaint. However, Minter had previously moved for continuance without contesting service and made no allegation that he was unaware of the counterclaims at the time he appeared in the action or would otherwise be prejudiced by proceeding thereon. The trial court denied the motion, and the matter proceeded to trial.

■ {¶ 9} Determination of sufficiency of service of process is a matter within the trial court's sound discretion.[1] An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable, or unconscionable.[2] "A decision is unreasonable if there is no sound reasoning process that would support that decision."[3]

■ {¶ 10} While "[i]t is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant[,] * * * [t]his may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court."[4] The defense of insufficiency of service attacks the court's jurisdiction and must be asserted in a party's first pleading, motion, or appearance.[5] A party who voluntarily appears in an action, and fails at his first opportunity to challenge the court's exercise of jurisdiction, will not later be heard to complain that the court lacked such jurisdiction.[6] By appearance for any other purpose than to object to jurisdiction,

1. *Bell v. Midwestern Educational Serv., Inc.* (1993), 89 Ohio App.3d 193, 203, 624 N.E.2d 196.

2. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

3. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

4. *In re Crews* (July 30, 1999), 2d Dist. No. 17670, 1999 WL 960584, quoting *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156–157, 11 OBR 471, 464 N.E.2d 538.

5. *In re Shepard* (Mar. 26, 2001), 4th Dist. No. 00CA12, 2001 WL 802209 (citations omitted).

6. *Long v. Newhouse* (1897), 57 Ohio St. 348, 49 N.E. 79; *Limbaugh v. Western Ohio RR. Co.* (1916), 94 Ohio St. 12, 113 N.E. 687; *Russell v. Drake* (1956), 164 Ohio St. 520, 58 O.O. 387, 132 N.E.2d 467.

a defendant enters his general appearance to the action and voluntarily submits himself to the jurisdiction of the court, and cannot afterwards claim that the court's jurisdiction of his person has not been properly obtained.[7]  Similarly, the appearance of party's representative in court with knowledge or acknowledgement of a counterclaim without objecting to service can effectively waive the requirement of proper service.[8]

{¶ 11} Considering Minter's general appearance, his representative's knowledge of the counterclaim, lack of immediate objection, subsequent motion without objection, and absence of claims or evidence of prejudice, we cannot find that the trial court's exercise of jurisdiction over the counterclaim was arbitrary, unreasonable, or unconscionable.

### Claims Against Michigan Millers

{¶ 12} R.C. 3929.06 permits a judgment creditor to file a "supplemental petition in the action in which said judgment was rendered" seeking satisfaction of judgment from the tortfeasor's insurer if, within thirty days after entry of final judgment, the tortfeasor's insurer has not paid the judgment creditor.[9]  Although the supplemental complaint proceeds in the original action, R.C. 3929.06(B) provides that commencement of a supplemental proceeding against an insurer is not authorized "until the expiration of the thirty-day period referred to in division (A)(2) of this section."  Consequently, Christian and C & S Trucking, as injured tort claimants, were barred from filing a supplemental complaint against Michigan Millers before obtaining judgment against Minter or Champaign.

{¶ 13} In its response to Christian and C & S Trucking's counterclaim and its motion for judgment on the pleadings, Michigan Millers asserted that it was not a proper party against whom to assert a direct action.  In denying the motion for judgment on the pleadings, the trial court agreed that Michigan Millers was not a proper party against whom to bring a counterclaim, effectively dismissing the premature claim.  The court's final entry reflects this determination, referencing Christian and C & S Trucking's claim for damages against Michigan Millers' insureds without mentioning any claims or specifically awarding damages against Michigan Millers.  Therefore, we do not find that the trial court erred in this regard.

{¶ 14} Accordingly, appellants' third assignment of error is overruled.

---

7.  *Long,* supra.

8.  See, e.g., *Alliance Group, Inc. v. Rosenfield* (1996), 115 Ohio App.3d 380, 387, 685 N.E.2d 570, citing Civ.R. 4.1.

9.  R.C. 3929.06(A)(1), (2).

Assignment of Error Number Five

"The trial court erred in awarding $31,841.17 in damages to intervening plaintiff, the Cincinnati Insurance Company, as its claims were time-barred by application of R.C. 2305.10. In addition, the trial court erred in awarding damages to Rickey Christian and Christian & Sons Trucking, since their claims were also time-barred by application of R.C. 2305.10."

{¶ 15} R.C. 2305.10 provides a statute of limitations of two-years from the date of loss for tort claims, including negligence, strict liability, and products liability for damage to personal property. Michigan Millers' August 7, 1999 complaint was filed within two years of the September 2, 1997 accident. However, Christian and C & S Trucking's claims and Cincinnati Insurance's intervening complaint, while submitted in the same action, were filed after expiration of the statutory period.

{¶ 16} Appellants argue that the counterclaim and intervening complaint had to be filed prior to expiration of the statute of limitations. However, it is well established that counterclaims relating to the same transaction or occurrence underlying the original claim relate back to the commencement of the action.[10] "When a unitary cause of action is owned by more than one person, each co-owner of that unitary cause of action is a real party in interest with respect thereto, and the action is not brought in the name of the real party in interest unless all such co-owners are joined as co-plaintiffs. But if one such co-owner has not been made a party plaintiff, the failure to prosecute the action in the name of the real party in interest can be cured by the joinder of the absent co-owner. Then, '[s]uch * * * joinder * * * shall have the same effect as if the action had been commenced in the name of the real party in interest.'"[11] In effect, the filing of a complaint by a plaintiff against a defendant tolls the statute of limitations for counterclaims that arise out of the same transaction or occurrence underlying the original claim. Similarly, a movant may intervene in an action after the expiration of the statute of limitations if the movant is a real party in interest, that is, a co-owner of a pending claim.[12] Once joined, the intervening pleading relates back to the date the claim was filed by or against the co-owner to whom the movant is joined.[13]

---

10. *Natl. Retailers Mut. Ins. Co. v. Gross* (1943), 142 Ohio St. 132, 134, 26 O.O. 337, 50 N.E.2d 258.

11. *Nationwide Mut. Ins. Co. v. Collins* (1985), 23 Ohio Misc.2d 22, 25, 23 OBR 187, 491 N.E.2d 407, citing Civ.R. 17 and 19.

12. *Likover v. Cleveland* (1978), 60 Ohio App.2d 154, 157, 14 O.O.3d 125, 396 N.E.2d 491; *Cincinnati Ins. Co. v. Twedell* (1998), 100 Ohio Misc.2d 25, 28–29, 717 N.E.2d 1195.

13. *Holibaugh v. Cox* (1958), 167 Ohio St. 340, 4 O.O.2d 461, 148 N.E.2d 677; *Marion v. Baker* (1987), 42 Ohio App.3d 151, 153–155, 537 N.E.2d 232.

{¶ 17} Applying this rationale to the case at bar, Christian and C & S Trucking's claims, including property damage and loss of profits, arise out of the same transaction or occurrence asserted in the original claim and, therefore, relate back to the commencement of the action. Furthermore, as Christian and C & S Trucking's subrogee and joint owner of an individual chose in action, Cincinnati Insurance is a necessary party to the proceedings, and its claims also relate back to the commencement of the action.[14]

{¶ 18} Accordingly, appellants' fifth assignment of error is overruled.

### Assignment of Error Number One

"The trial court abused its discretion by concluding that Rickey Christian was under no legal duty to give an audible signal under R.C. 4511.27(A) (B) prior to passing John Minter. As a result, the trial court erred by concluding that Rickey Christian breached no duty owed to John Minter when he struck John Minter's vehicle while passing him prior to giving an effective audible signal. The trial court accordingly erred by failing to conclude that Rickey Christian was the sole and proximate cause of plaintiff's damages, not John Minter."

### Assignment of Error Number Two

"The trial court erred by concluding that John Minter breached his duty to Rickey Christian when it is Rickey Christian who struck John Minter's vehicle while passing him prior to giving an effective audible signal. By checking his mirror prior to beginning his turn and by properly activating an effective light signal prior to beginning his turn, John Minter breached no duty owed to Rickey Christian. Thus, the trial court erred by concluding that John Minter was the sole and proximate cause of Christian and C & S Trucking's damages."

{¶ 19} In their first and second assignments of error, appellants contend that the trial court "abused its discretion in concluding that '[t]he case law and facts do not require that a signal given be an audible one,' when the light signal given by Christian could not have been effective in warning Minter that Christian intended to pass him." Appellants submit that Minter was enclosed in a cab with a tank obstructing his rear view and that only an audible signal could have warned Minter that someone was passing, concluding that Christian's failure to use an audible signal constitutes negligence per se. Appellants further assert that Christian was speeding at the time of the accident and failed to yield to Minter's turn signal. They aver that Minter was proceeding in a lawful manner when he attempted to execute his turn.

---

14. Id.; Civ.R. 17, 19, and 24.

*Audible Signal*

{¶ 20} As an initial matter, we address whether the failure to give an audible signal prior to passing constitutes negligence per se. We recently addressed this issue in *Caudill v. Damschroder*,[15] wherein we held that while R.C. 4511.27(B) provides that the driver of the overtaken vehicle should yield to an audible signal, R.C. 4511.27(A) does not require a passing vehicle to give an audible signal. In *Wilfong v. Batdorf,* the Ohio Supreme Court recognized as much, indicating that "[a]ny signal which would be effective to alert a driver of a vehicle to be overtaken of the intention of an overtaking vehicle's driver to pass is sufficient to satisfy Subsection (A)."[16] Whether the signal provided by an overtaking vehicle's driver was a sufficient indication of an intention to pass is a question reserved to the trier of fact.[17]

*Manifest Weight*

{¶ 21} Appellants essentially argue that the trial court's judgment is against the manifest weight of the evidence. Judgments supported by competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence.[18] Because trial courts are in the best position to observe the witnesses, they are afforded significant discretion in determining witness credibility and the weight and sufficiency of the evidence.[19] "We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts."[20] In the event the evidence is susceptible of more than one interpretation, we must construe it consistently with the lower court's judgment.[21]

{¶ 22} At trial, Minter testified that when he missed the field to be sprayed, he looked for a place to turn around, activated his turn signal, checked

15. *Caudill v. Damschroder,* 147 Ohio App.3d 233, 2002-Ohio-1196, 769 N.E.2d 902, ¶ 17, citing *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185, overruled on other grounds by *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.

16. *Wilfong,* 6 Ohio St.3d at 102, 6 OBR 162, 451 N.E.2d 1185.

17. *Caudill,* 147 Ohio App.3d 233, 2002-Ohio-1196, 769 N.E.2d 902, at ¶ 21.

18. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

19. *State v. Meyers* (2001), 146 Ohio App.3d 563, 574, 767 N.E.2d 739; *First Bank of Marietta v. Roslovic & Partners, Inc.* (2000), 138 Ohio App.3d 533, 538, 741 N.E.2d 917.

20. *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

21. Id., citing *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

his mirrors, and began a left turn into a private drive. When asked whether his vision was obstructed, Minter responded: "Maybe your back window behind you, because the tank's there." He subsequently explained: "You can see anything behind you unless it's, you know, something small, a car that's curved in. But anything big enough you can see in both sides of the mirror." Minter testified that he did not see the dump truck or any other vehicles through the s-curve or after the highway had straightened into the passing zone. He indicated that he activated his turn signal seconds before impact and had just started his turn when he first saw the dump truck in the passing lane. Minter stated that the truck was even with his cab when they collided, describing the moment he saw the truck and the impact as "practically instantaneous."

{¶ 23} Christian testified that he was driving east on County Road 10 when he saw the sprayer ahead of him. He followed the sprayer at a distance of forty to sixty feet for approximately one-half mile through the s-curve at a speed of ten to fifteen miles per hour. He indicated that a white car traveling in front of him passed the sprayer when it reached the passing zone. Christian then eased out looking for an opportunity to pass. Seeing no oncoming traffic, he signaled his intention to pass, pulled into the passing lane, and began to shift through the gears to obtain sufficient speed to overtake the sprayer. He testified that he saw no turn signal from the sprayer before he began to pass. The sprayer suddenly turned left into the dump truck as Christian attained an estimated speed of thirty-eight miles per hour and was directly beside the sprayer's cab. After the impact, he briefly applied his brakes, but primarily coasted to a stop in the grassy berm for fear of overturning the heavily laden truck.

{¶ 24} Each side also called an expert witness in accident reconstruction. Appellants' expert testified that he believed that the truck was going in excess of fifty-nine miles per hour at the point of impact but conceded that he had assumed that the truck applied a braking effort throughout the berm, even though he did not observe the tearing of the turf one would expect to see when a heavy truck is braking. He admitted that erroneous factors in the skid-speed formula would require recalculation. Appellees' expert witness employed the same formula but utilized a rolling resistance factor because Christian's version of events and condition of the scene supported that the truck had coasted to a stop. He arrived at an estimated impact speed of forty-five miles per hour. Based upon the truck's specifications, he further projected that it would have taken seven to fifteen seconds to shift through the gears and attain that speed.

{¶ 25} Based on the testimony and evidence presented, the trial court found that the circumstances did not require the use of an audible signal and that Christian complied with R.C. 4511.27 by using his turn signal to indicate his intention to overtake the sprayer. The court determined that Minter had failed

to take appropriate steps to monitor traffic and assure that a left turn could be executed safely, concluding that a preponderance of the evidence supported that Minter's negligence was the sole cause of the accident.

{¶ 26} Although the parties' testimony and evidence conflicted in certain respects, appellants' difference of opinion as to the credibility of witnesses is not grounds for reversal.[22]   A review of the record reveals competent, credible evidence supporting the trial court's determinations, including that the circumstances did not require Christian to provide an audible signal and that Minter's negligent operation of the sprayer caused the accident.   Therefore, we do not find that the court's judgment is against the manifest weight of the evidence.

{¶ 27} Accordingly, we overrule appellants' first and second assignments of error.

### Assignment of Error Number Four

"The trial court erred in awarding $23,425.81 for lost profits and $1,000.00 for a paid deductible to defendants, Rickey Christian and Christian & Sons Trucking, Inc., because there was no evidence introduced at trial to support either damage claim.   In addition, the trial court erred awarding $23,425.81 for lost profits when there was no expert evidence introduced at trial to support this damages claim."

{¶ 28} At trial, Christian testified to C & S Trucking's profit loss based upon observation of market conditions during the forty-two days the truck was being repaired, records of company earnings during the forty-two days preceding the accident, and records of company earnings during identical periods in the years preceding and following the accident.   The records relied upon included compilations of customer receipts and printouts, including lists of all loads hauled, the type and amount of the load, and the price paid per ton.

{¶ 29} Christian further testified that the company had paid a $1,000 deductible as a result of the accident.

{¶ 30} Initially, appellants contend that lost profits "do not reflect the measure of damages for a motor vehicle collision in Ohio." However, "[a] plaintiff may recover profits lost as a result of a defendant's tortious conduct if such damages may naturally be expected to follow from the wrongful act and if the damages are reasonably ascertainable."[23]   Accordingly, lost profits resulting from

---

22.  *Seasons Coal*, 10 Ohio St.3d at 80, 10 OBR 408, 461 N.E.2d 1273.

23.  *Henry v. Akron* (1985), 27 Ohio App.3d 369, 372, 27 OBR 465, 501 N.E.2d 659, citing *Zimmerman v. Isaly Dairy Co.* (1956), 165 Ohio St. 354, 59 O.O. 465, 135 N.E.2d 338; *Lo*  .

an automobile accident caused by another's negligence are certainly cognizable damages.[24]

{¶ 31} Appellants alternatively argue that expert evidence was necessary to prove lost profits, claiming that nothing in the record indicates that Christian was qualified to make an income projection from personal knowledge of market conditions and C & S Trucking's business records. However, lost profits may be established with reasonable certainty either directly or through an expert witness.[25] Proof with mathematical precision is not required, nor need the proof be clear and irrefutable, but profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors without undue speculation.[26]

{¶ 32} Appellants also maintain that the trial court could not award the deductible in absence of documentation of the payment. In essence, appellants assert that Christian was not qualified as an expert, that the income projection lacked foundation, and that the deductible testimony was hearsay. Review of the record reveals that appellants failed to lodge an objection to any of the aforementioned grounds, challenging only whether the damages had been sufficiently pled. Failure either to object or move to strike evidence at trial on the basis of hearsay,[27] a witness' qualifications,[28] or purported foundational deficiencies,[29] waives any challenge on appeal, save plain error. Having reviewed

*Schiavo v. Northern Ohio Traction & Light Co.* (1922), 106 Ohio St. 61, 138 N.E. 372; 25 Corpus Juris Secundum (1966) 752, 1226, Damages, Sections 44, 143.

**24.** See *Hart v. Fissell* (Apr. 29, 1988), Auglaize App. No. 2–87–1, 1988 WL 40443.

**25.** R. Dunn, Recovery of Damages for Lost Profits 2d (1981) 223, Section 5.4; *Endersby v. Schneppe* (1991), 73 Ohio App.3d 212, 216–217, 596 N.E.2d 1081; *Kinetico, Inc. v. Indep. Ohio Nail Co.* (1984), 19 Ohio App.3d 26, 30, 19 OBR 92, 482 N.E.2d 1345.

**26.** Cf. *McNulty v. PLS Acquisition Corp.*, 8th Dist. Nos. 79025, 79125 and 79195, 2002-Ohio-7220, fn. 14, ¶ a, 2002 WL 31875200, quoting *Ashland Mgt. Inc. v. Janien* (1993), 82 N.Y.2d 395, 604 N.Y.S.2d 912, 624 N.E.2d 1007; *Smith v. Lima Mem. Hosp.* (May 27, 1999), Allen App. No. 1–98–73, 1999 WL 378364, appeal not allowed in (1999), 87 Ohio St.3d 1409, 716 N.E.2d 1170, citing 25A Corpus Juris Secundum (1966) 70–72, Damages, Section 162.

**27.** See *AFK Bldg. Systems, LLC v. Cottrill* (Mar. 5, 2003), 5th Dist. No. 02–CA–55, 2003-Ohio-1042, 2003 WL 854141, ¶ 10.

**28.** See *In re Stacey S.* (1999), 136 Ohio App.3d 503, 516, 737 N.E.2d 92; *Amerifirst Sav. Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 481, 737 N.E.2d 68.

**29.** See *Proctor v. Wolber* (May 24, 2002), Hancock App. No. 5–01–38, 2002-Ohio-2593, 2002 WL 1275431, ¶ 51; *Stern Enterprises v. Plaza Theaters I & II, Inc.* (1995), 105 Ohio App.3d 601, 609, 664 N.E.2d 981.

the record herein, we cannot say that any error in the admission of this evidence has challenged or undermined the legitimacy of the judicial process.[30] Furthermore, we do not find that the evidence was so speculative as to preclude the entry of an award of damages for lost profits.

{¶ 33} Accordingly, Appellants' fourth assignment of error is overruled.

### Assignment of Error Number Six

"The trial court erred in awarding $31,841.17 in damages to intervening plaintiff, the Cincinnati Insurance Company, as it failed to produce any evidence that it had a contractual subrogation right."

{¶ 34} In their sixth assignment of error, appellants argue that Cincinnati Insurance's claims are not legally cognizable because Cincinnati Insurance "did not introduce any insurance policy into the record that would demonstrate that [it] possesses a subrogated right to recover damages."

{¶ 35} Initially, we note that a written agreement is not a necessary prerequisite to a valid subrogation claim. "The right of an insurer to be subrogated to the rights of the insured arises either from the right of conventional subrogation, that is, subrogation by agreement between the parties, or equitable subrogation by operation of law."[31] Conventional subrogation is "premised on the contractual obligations of the parties, either express or implied."[32] "Where a loss, covered by insurance, is occasioned by a wrong-doer, the underwriter, after reimbursing it in specie, or making compensation in money, is, in a proper case, entitled to be subrogated, *quoad hoc*, to the right of the assured against the wrong-doer. This is of the highest equity; for whereas the loss is, in the first instance, that of the insured, after reimbursement or compensation, it becomes the loss of the insurer."[33]

{¶ 36} In this instance, the parties stipulated at trial that Cincinnati Insurance had paid $31,841.17 for damages to C & S Trucking's vehicle resulting from the September 2, 1997 accident. Appellants did not dispute the existence of either the underlying insurance policy or Cincinnati Insurance's right to subrogation for the amounts paid. Therefore, we do not find that the trial court erred in

---

30. *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.

31. *Erie Ins. Co. v. Kaltenbach* (1998), 130 Ohio App.3d 542, 546, 720 N.E.2d 597, citing *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 647 N.E.2d 1358; *Travelers Indemn. Co. v. Brooks* (1977), 60 Ohio App.2d 37, 14 O.O.3d 19, 395 N.E.2d 494.

32. *Hrenko*, 72 Ohio St.3d at 121, 647 N.E.2d 1358.

33. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 29, 521 N.E.2d 447, quoting *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, 387, 1872 WL 17.

concluding that Cincinnati Insurance was entitled to be subrogated to amounts paid for property damage to C & S Trucking's vehicle.

{¶ 37} Accordingly, appellants' sixth assignment of error is overruled.

{¶ 38} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the Logan County Court of Common Pleas.

Judgment affirmed.

THOMAS F. BRYANT, P.J., and CUPP, J., concur.