OPINION
{¶ 1} These are accelerated calendar cases, submitted to this court on the records and the briefs of the parties. Appellant, Frank Randolph ("Frank"), appeals the judgments entered by the Trumbull County Court of Common Pleas, Probate Division. The trial court's judgment entries changed the surnames of appellant's children from Randolph to O'Brien.
 {¶ 2} Frank was married to appellee, Maureen O'Brien ("Maureen"). The marriage produced two children, Reganne Louise Randolph and Hayden Frederic Randolph. In June 2000, the parties were divorced, and Maureen was designated the residential parent and legal custodian of both children. Frank was granted visitation and ordered to pay child support.
 {¶ 3} In August 2001, Maureen filed an application to change the surnames names of both children from Randolph to O'Brien. Maureen claims she sent notice to Frank at the last known address, via regular mail. She also checked with the telephone company for a listing for Frank in East Liverpool, Ohio and in West Virginia. In addition, she published notice in the Trumbull County Legal News, which the trial court concluded is a newspaper of general circulation. This notice appeared one time, on September 24, 2001.
 {¶ 4} A hearing was held in November 2001. Frank did not attend this hearing. Thereafter, the trial court found that notice was properly given to Frank. In addition, the court found there were reasonable grounds supporting Maureen's motion and entered judgments changing the names of the children to O'Brien.
 {¶ 5} Frank asserts that he first learned that the children's names were changed in September 2002. After he became aware of the changes, he filed a motion to reopen, a motion to vacate, and a motion for relief from judgment pursuant to Civ.R. 60 in both cases. A hearing was held on Frank's motions. At the hearing, Frank; Maureen; Lori Allen, Frank's sister ("Lori"); Dana Shaw, Frank's sister ("Dana"); and Geraldine Dinardo, Frank's mother ("Geraldine"), testified. Following the hearing, the trial court denied all of Frank's motions.
 {¶ 6} Frank raises two assignments of error. His first assignment of error is:
 {¶ 7} "The trial court abused its' [sic.] discretion and prejudicially erred by denying appellant-movant, Frank Randolph's motions to vacate the name change for his minor children."
 {¶ 8} In his motion to vacate, Frank challenged service and, essentially, personal jurisdiction. A court obtains personal jurisdiction over a defendant by (1) service of process; (2) voluntary appearance and submission of the defendant to the court's jurisdiction; or (3) other acts the defendant commits that constitute a waiver of a jurisdictional defense.[1]
 {¶ 9} It is well-settled that a party can waive personal jurisdiction or voluntarily submit to the court's jurisdiction.[2] Since the time of his appearance, Frank has challenged personal jurisdiction. He has never voluntarily submitted himself to the jurisdiction of the court. As such, Frank has not waived jurisdiction.[3]
 {¶ 10} Applications for name changes are governed by R.C. 2717.01, which provides:
 {¶ 11} "(A) A person desiring a change of name may file and application in the probate court of the county in which the person resides. The application shall set forth that the applicant has been a bona fide resident of that county for at least one year prior to the filing of the application, the cause for which the change of name is sought, and the requested new name.
 {¶ 12} "Notice of the application shall be given once by publication in a newspaper of general circulation in the county at least thirty days before the hearing on the application. The notice shall set forth the court in which the application was filed, the case number, and the date and time of the hearing.
 {¶ 13} "Upon proof that proper notice was given and that the facts set forth in the application show reasonable and proper cause for changing the name of the applicant, the court may order the change of name.
 {¶ 14} "(B) An application for change of name may be made on behalf of a minor by either of the minor's parents, a legal guardian, or a guardian ad litem. When application is made on behalf of a minor, in addition to the notice and proof required pursuant to division (A) of this section, the consent of both living, legal parents of the minor shall be filed, or notice of the hearing shall be given to the parent or parents not consenting by certified mail, return receipt requested. If there is no known father of the minor, the notice shall be given to the person who the mother of the minor alleges to be the father. If no father is so alleged, or if either parent or the address of either parent is unknown, notice pursuant to division (A) of this section shall be sufficient as to the father or parent." (Emphasis added.)
 {¶ 15} Maureen admitted that she did not send notice of the hearing to appellant via certified mail. Accordingly, in order to take advantage of serving Frank by publication, she needed to show that she did not know Frank's address.
 {¶ 16} The requirements for process by publication are set forth in Civ.R. 4.4(A), which provides, in part:
 {¶ 17} "(A) Residence unknown.
 {¶ 18} "(1) Except in an action governed by division (A)(2) of this rule, if the residence of a defendant is unknown, service shall be made by publication in actions where such service is authorized by law. Before service by publication can be made, an affidavit of a party or his counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the defendant is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the defendant, and that the residence of the defendant cannot be ascertained with reasonable diligence."
 {¶ 19} In interpreting this rule, the Supreme Court of Ohio has held that "[i]n order to use service by publication, a plaintiff must first use reasonable diligence in his attempt to locate a defendant."[4]
 {¶ 20} "Reasonable diligence requires taking steps that an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address and requires counsel to use common and readily available sources in the search, such as a check of the telephone book or a call to the telephone company, checking the city directory, a credit bureau, county records such as auto title department or board of elections, or an inquiry of former neighbors."[5]
 {¶ 21} Finally, "minimal" efforts do not satisfy the reasonable diligence standard.[6]
 {¶ 22} If a party's exercise of reasonable diligence is challenged, it is that party's duty to support its claim that reasonable diligence was utilized.[7]
 {¶ 23} Maureen filed an "affidavit of unknown residency of parent" with the trial court. This affidavit states, in part:
 {¶ 24} "Mother attempted to reach Frank Randolph via mail and telephone. She has additionally attempted to reach him through the Bureau of Support. The only address that Maureen E. O'Brien has for Frank Randolph is the following: 16246 Cannons Mill Road, East Liverpool, Ohio 43920. Ms. O'Brien cannot be certain this address is correct. O'Brien has attempted to contact Randolph's family to no avail."
 {¶ 25} At the hearing, Maureen admitted that she did not actually attempt to call Frank. Rather, the telephone reference referred to her attempts at contacting the telephone company to see if Frank was listed in East Liverpool, Ohio or in West Virginia. In addition, she testified that she mailed the notice to the East Liverpool address, via regular mail. However, she did not submit any physical evidence, such as a copy of the letter or envelope, to substantiate this assertion. However, assuming Maureen did attempt to contact Frank via regular mail, combined with her searches of the telephone company records and the Bureau of Support, Maureen still failed to exercise reasonable diligence due to her failure to contact members of Frank's family to inquire about his location.
 {¶ 26} The following testimony regarding Maureen's contact with Frank's family occurred at the hearing:
 {¶ 27} "Q. [by Mr. Barnett — Frank's attorney] Okay. Now, you knew where his mother lived, correct?
 {¶ 28} "A. [by Maureen] I know where his mother lived. I had no contact with her for two years.
 {¶ 29} "Q. You knew his mother's phone number, correct?
 {¶ 30} "A. Yes. It's in the phone book.
 {¶ 31} "* * *
 {¶ 32} "Q. Did you know Dana's [Frank's sister] address?
 {¶ 33} "A. Dana's? Yeah, she was living with me.
 {¶ 34} "Q. You knew how to get a hold of her?
 {¶ 35} "A. Yes, I talked to her.
 {¶ 36} "Q. What about Lori Allen [Frank's sister]? Did you know Lori Allen's address?
 {¶ 37} "A. Yes, she lives in Hermitage.
 {¶ 38} "Q. Did you know how to get a hold of her?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. Did you ever try and contact her?
 {¶ 41} "A. I did talk to Lori. She said she hasn't talked to Frank but once a year on holidays, basically the same thing.
 {¶ 42} "Q. Did you ever tell her you were filing for a name change?
 {¶ 43} "A. No, because I didn't talk to her in a year."
 {¶ 44} Maureen and Dana had been friends since they were in school. Dana lived with Maureen for three months after she was divorced from Frank. Dana testified that Maureen never inquired about Frank's whereabouts or informed her that there was a name change proceeding. Dana stated that she spoke to Maureen about five times per week during the fall of 2001, when the name-change action was pending. Contrarily, Maureen testified that Dana was aware of the name-change proceeding. She testified that she asked Dana for Frank's address and Dana replied "she didn't want to get involved."
 {¶ 45} Obviously, there was conflicting testimony regarding the issue of whether Maureen attempted to ascertain Frank's location from Dana. However, even looking solely at Maureen's testimony, it cannot be conclusively determined that she informed Dana of the pending name-change actions at the same time she inquired about Frank's whereabouts, or that the name-change proceedings were the reason she was attempting to locate Frank.
 {¶ 46} We note that a better practice would have been for Maureen, perhaps through her attorney, to send a formal, written request to Dana asking for information regarding the location of Frank and stating the reason for the request. This practice would have resulted in (1) finding Frank or (2) providing supporting evidence to a reasonable diligence claim.
 {¶ 47} However, even if we were to find that Maureen exercised reasonable diligence in regard to her questioning Dana about Frank's location, her ultimate claim of reasonable diligence would still fail. This is because Maureen did not attempt to contact Geraldine or Lori to find out where Frank was when the motion for a name change was filed.
 {¶ 48} Maureen testified that she knew where Geraldine and Lori lived and knew how to get in touch with both of them. Geraldine testified that she has lived in the same residence, and had the same phone number, for twenty-seven years. In addition, there was evidence presented that Maureen had called and visited Geraldine's residence numerous times, dating back to her school-aged friendship with Dana. However, Maureen did not contact either of these individuals to inform them of the name change proceeding and inquire about a means of contacting Frank.
 {¶ 49} Maureen's failure to exercise due diligence was not a credibility issue. Through her own testimony, Maureen admitted she did not even attempt to contact Geraldine or Lisa. There was no conflicting evidence on this issue.
 {¶ 50} It is important to remember the nature of this action. In some cases, for example a tort action resulting from an automobile accident, reasonable diligence may not require contacting members of the defendant's family to ascertain his whereabouts. However, Frank was Maureen's ex-husband and, more importantly for this analysis, the children's father. In this action, Geraldine and Lori were "readily available sources" that a prudent person would attempt to contact to locate the whereabouts of Frank. Specifically, these individuals were Frank's mother and sister, as well as the children's grandmother and aunt. We cannot say that a "diligent" search was conducted, when contact with these individuals was not even attempted.
 {¶ 51} Maureen did not exercise reasonable diligence in her attempt to locate Frank. Therefore, her attempt at service by means of publication was deficient.
 {¶ 52} In addition, even if we were to conclude that Maureen exercised reasonable diligence in her efforts to locate Frank, her attempted service would still be insufficient. Civ.R. 4.4 sets forth the requirements for service by publication. According to Civ.R. 4.4(A) and R.C. 2707.01(B), service may be made by publication when the residence of the defendant is unknown. "The publication shall contain the name and address of the court, the case number, the name of the first party on each side, and the name and last known address, if any, of the person or persons whose residence is unknown."[8] In addition, the publication must be contained in a newspaper of "general circulation."[9]
 {¶ 53} Frank argued in his motion that service was improper under Civ.R. 4.4 because the publication failed to state his name and last known address. We note that R.C. 2707.01(A) does not specifically require that the father's name and last known address be included in the publication. However, R.C. 2707.01(A) concerns newspaper notifications regarding name changes in general, including those where parental notification is not required. R.C. 2707.01(B) expressly provides for service on a nonconsenting parent. Accordingly, it follows that Civ.R. 4.4 applies to this matter and requires a notice by publication to include the name and last known address of the nonconsenting parent. A copy of the challenged publication is contained within the record. It indeed failed to state Frank's name and last known address.
 {¶ 54} "Ohio appellate courts have found that in cases where no last known address was included in the notice by publication and where such address was available to the party serving notice, service was fatally defective and any judgment arising therefrom was void ab initio."[10]
At the hearing, Maureen admitted that she had a "last known address" for Frank, which was in East Liverpool. However, the newspaper notice did not include this address. For this failure, the judgment of the trial court was void.
 {¶ 55} Finally, the judgment was void because the notice was not printed in a newspaper of "general circulation." The notice was printed in the Trumbull County Legal News. The November 14, 2001 judgment entry, which changed the names of the children, incorrectly referred to this newspaper as a newspaper of "general circulation."
 {¶ 56} Pursuant to Evid.R. 201(C), "[a] court may take judicial notice, whether requested or not" of adjudicative facts. Furthermore, "[j]udicial notice may be taken at any stage of the proceeding."[11] We take judicial notice that the Trumbull County Legal News is a legal newspaper, published weekly.
 {¶ 57} The Supreme Court of Ohio has held that a weekly legal newspaper is not a newspaper of "general circulation."[12] Because The Trumbull County Legal News is a weekly legal newspaper, the newspaper was not one of "general circulation." Publication in this newspaper was insufficient to confer personal jurisdiction over Frank. For this additional reason, the judgment of the trial court was void.
 {¶ 58} When personal service is deficient, the judgment of the court is void.[13] In this matter, Maureen did not perfect service on Frank. Therefore, the November 14, 2001 judgment entry, changing the names of the children, was clearly void ab initio. Thus, the trial court erred by denying Frank's motion to vacate the judgment.
 {¶ 59} Frank's first assignment of error has merit.
 {¶ 60} Frank's second assignment of error is:
 {¶ 61} "The trial court abused its' [sic.] discretion by denying the appellantmovant's motion for relief from judgment pursuant to Civil Rule 60(B)(1), (3) and (5)."
 {¶ 62} We found merit in Frank's first assignment of error. Thus, his second assignment of error is moot.
 {¶ 63} The judgments of the trial court are reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Specifically, the trial court is instructed to enter judgments vacating its previous judgments granting the name changes.
Grendell, J., concurs, Christley, J., concurs in judgment only.
[1] Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156.
[2] Id.
[3] See, e.g., Michigan Millers Mut. Ins. Co. v. Christian,153 Ohio App.3d 299, 2003-Ohio-2455, at ¶ 10.
[4] First Bank of Marietta v. Cline (1984), 12 Ohio St.3d 317, 318, citing Brooks v. Rollins (1984), 9 Ohio St.3d 8; and Sizemore v. Smith
(1983), 6 Ohio St.3d 330.
[5] Kraus v. Maurer (2000), 138 Ohio App.3d 163, 167, citingSizemore v. Smith (1983), 6 Ohio St.3d 330.
[6] In re Mullenax (1996), 108 Ohio App.3d 271, 274, quotingIn re Cowling (1991), 72 Ohio App.3d 499, 502.
[7] Id., citing In re Miller (1986), 33 Ohio App.3d 224, 226.
[8] Civ.R. 4.4(A)(1).
[9] Id.; R.C. 2717.01.
[10] In re Goldberg (Sept. 17, 2001), 12th Dist. Nos. CA2001-04-026 and CA2001-05-047, 2001 Ohio App. LEXIS 4141, at *7, citing Meadows v.Meadows (1992), 73 Ohio App.3d 316, 321-322; Demianczuk v.Demianczuk (1984), 20 Ohio App.3d 244, 246.
[11] Evid.R. 201(F). See, also, State ex rel. Klimkowski v. Sikora, 8th Dist. No. 81951, 2002-Ohio-6339, at ¶ 4.
[12] Record Publishing Co. v. Kainrad (1990), 49 Ohio St.3d 296, 301; See, also, In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, at ¶34-35.
[13] In re Mullenax, supra, citing In re Miller, supra.