OPINION
{¶ 1} Defendant-appellant Melvin R. Swartz appeals from the June 7, 2005, Judgment Entry of the Richland County Court of Common Pleas which entered judgment in favor of plaintiff-appellee State Farm Mutual Automobile Insurance Company against appellant in the amount of $30,000.00.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This case arises from a motor vehicle accident which occurred on March 25, 2002, in Mansfield, Ohio. The accident involved three motor vehicles. One of the vehicles was driven by Billy J. Stamper. Stamper had an automobile insurance policy with State Farm Mutual Automobile Insurance Company [hereinafter appellee]. Appellant was driving one of the other vehicles. Appellant failed to stop his vehicle at a stop sign at an intersection and attempted to make a right hand turn onto another street. Appellant's vehicle was struck from behind by a southbound vehicle (the third vehicle involved) operated by Paul E. Temple, II, a non-party. After the impact, appellant's vehicle went left of center and struck, head on, the motor vehicle operated by Stamper. According to appellee and Stamper, Stamper incurred serious bodily injury as a direct and proximate result of the impact. Stamper submitted a claim to State Farm. State Farm paid $30,000.00 to/and on behalf of Mr. Stamper for personal injuries.
 {¶ 3} On May 24, 2004, appellee filed a complaint in the Richland County Court of Common Pleas. Appellee sought payment from appellant for the sum paid to Stamper claiming a right to subrogation. Subsequently, appellant filed a motion to dismiss alleging that appellee had failed to join an indispensable party, namely, Temple. The trial court overruled appellant's motion by a Judgment Entry filed June 2, 2004.
 {¶ 4} The case proceeded to trial on May 31, 2005. During the trial, appellant filed a motion for directed verdict. In that motion, appellant contended that appellee failed to prove it had a right to subrogation because it failed to present Stamper's insurance policy or otherwise prove a right to subrogation of Stamper's claim. The trial court granted the motion for directed verdict on the issues of statutory and contractual subrogation. However, the trial court overruled the motion for directed verdict on the issue of equitable subrogation. Ultimately, the jury returned a verdict in favor of appellee in the amount of $30,000.00. The Judgment Entry on Jury Verdict was filed on June 7, 2005.
 {¶ 5} It is from the June 7, 2005, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 6} "I. THE TRIAL COURT ERRED IN NOT DISMISSING THIS ACTION PURSUANT TO THE CIVIL RULES FOR FAILURE TO NAME A NECESSARY AND INDISPENSABLE PARTY.
 {¶ 7} "II. THE TRIAL COURT ERRED IN THIS MATTER BY NOT DIRECTING A VERDICT AS TO THE ITEMS OF PLAINTIFF'S ALLEGED DAMAGES WHICH WERE NOT SUPPORTED BY APPROPRIATE MEDICAL EVIDENCE AND DAMAGES NOT RECOERABLE [SIC].
 {¶ 8} "III. THE TRIAL COURT ERRED IN NOT DIRECTING THE VERDICT FOR THE DEFENDANT AND ALLOWING THIS CASE TO PROCEDD [SIC] TO JURY DECISION AS THE PLAINTIFF PRODUCED NO EVIDENCE OF A CONTRACT OR ANY OBLIGATION ON THE PLAINTIFF'S PART TO PAY THE DAMAGES AND ALLOWING EQUITABLE SUBROGATION AND THE PLAINTIFF TO RECOVER ON THAT INAPPROPRIATE CLAIM."
 I {¶ 9} In the first assignment of error, appellant argues that the trial court erred when it failed to grant appellant's motion to dismiss for failure to name a necessary and indispensable party. We disagree.
 {¶ 10} An appellate court reviews motions to dismiss de novo.Plumbers Steamfitters Local Union 83 v. Union Local Sch. Dist.Bd. of Edn. (July 22, 1998), Belmont App. No. 97-BA-40 (overruled on other grounds). It is according to that standard of review that we consider appellant's assignment of error.
 {¶ 11} Civil Rule 19 provides for the joinder of persons needed for just adjudication and states in pertinent part as follows:
 {¶ 12} "(A) Persons to be joined if possible. "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest . . ."
 {¶ 13} "B) Determination by court whenever joinder not feasible. If a person as described in subdivision (A)(1), (2), or (3) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."
 {¶ 14} In other words, an indispensable party is one whose absence seriously prejudices any party to the action or prevents the court from rendering an effective judgment between the parties, or is one whose interests will be adversely affected or jeopardized by a judgment between the parties to the action.Layne v. Huffman (1974), 43 Ohio App.2d 53, 333 N.E.2d 147. The Supreme Court of Ohio has recognized that dismissal pursuant to Civ. R. 19(B) is a harsh result which should be avoided when the defect can be cured. State ex rel. Bush v. Spurlock (1989),42 Ohio St.3d 77, 81, 537 N.E.2d 641.
 {¶ 15} Appellant filed a motion to dismiss in which appellant contended that the case had to be dismissed because Temple had not been named by appellee as a party to the action. Appellant asserted that it was his position that negligence by Temple was the "sole and proximate cause of the collision." Further, according to appellant, the statute of limitations in the matter had expired and Temple could no longer be held responsible.
 {¶ 16} When the trial court denied appellant's motion to dismiss for failure to join a necessary party, it noted that a plaintiff is not required to sue all possible tortfeasors. It instructed that if appellant wanted Temple in the case, appellant could file a third party complaint against Temple. The trial court was correct. Even if appellant is correct that the statute of limitations applicable to the collision has passed, the statute of limitations for filing a third party complaint is not the statute of limitations for the initial lawsuit. See Lombardov. Calabrese (Nov. 4, 1982), Cuyahoga App. No. 44520, 1982 WL 2514. Generally, third party claims seek contribution or indemnification. The applicable statute of limitations for such claims does not begin to run against defendant (third party defendant) until judgment has been entered against the defendant, and perhaps not until the judgment has been paid by the defendant." Id. However, appellant did not attempt to file a third party complaint against Temple.
 {¶ 17} Further, Temple does not meet the requirements for a necessary party pursuant to Civ.R. 19(A). Complete relief can be accorded among those already parties. Appellant raised Temple's alleged liability as a defense to the appellee's allegations of negligence by appellant. Temple testified at trial. Appellant's counsel attempted to show that Temple's driving was the cause of the accident. In other words, appellant had the opportunity to prove that Temple was responsible for the accident. Therefore, we conclude that complete relief was available to the parties without joinder.
 {¶ 18} For the foregoing reasons, the appellant's assignment of error is overruled.
 II {¶ 19} In the second assignment of error, appellant contends that the trial court erred when it failed to direct a verdict on Stamper's medical expenses for Stamper's four day stay in a hospital and medical expenses related to a claim of fluids in Stamper's abdomen. Appellant argues that appellee never provided evidence to relate the hospital stay and abdominal fluids to the automobile accident within a reasonable degree of medical certainty. In addition, appellant argues that the trial court erroneously permitted the jury to consider Stamper's attorney fees when attorney fees are not items of damages that can be recovered in a personal injury case.
 {¶ 20} The standard of review for the grant or denial of a motion for directed verdict is as follows: whether there was probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Sanek v. Duracote Corp. (1989),43 Ohio St.3d 169, 172, 539 N.E.2d 1114. This standard of review involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury, and it constitutes a question of law, not one of fact. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695, 586 N.E.2d 141, 141; Vosgerichian v. Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, 1996 WL 86684.
 {¶ 21} We will first address appellant's contention that there was no evidence presented to link a four day hospital stay concerning abdominal fluids to the accident involving appellant and Stamper. We disagree.
 {¶ 22} The parties agree that Stamper was unconscious following the accident and was taken by ambulance to a hospital. According to the testimony of Dr. Maxwell, the physician who treated Stamper in the emergency room of the hospital, once Stamper regained consciousness, he complained of abdominal pain as well as pain from a laceration to his forehead and an injury to his knee. Dr. Maxwell treated Stamper based upon those injuries and complaints. Dr. Maxwell also became concerned that Stamper had suffered a blow to his chest, causing a contusion.
 {¶ 23} Dr. Maxwell testified, to a reasonable degree of medical certainty, that a CAT scan showed that Stamper had some fluid over the liver and that Dr. Maxwell was concerned that there was the possibility of injury to the liver with a small amount of bleeding. Tr. 12-13. Dr. Maxwell further testified that he believed that the injuries identified were "all related to the motor vehicle accident."[1] Dr. Maxwell stated that initial treatment for such fluid was to wait and see what happened or developed. As a result of the abdominal concern as well as concerns over Stamper's initial loss of consciousness after the accident and the blow to Stamper's chest wall, Dr. Maxwell determined that Stamper should be admitted to the hospital. Stamper was placed in intensive care. Ultimately, he was admitted to the hospital on March 25, 2002 and discharged on March 29, 2002.
 {¶ 24} Dr. Maxwell clearly testified that there was abdominal fluid over Stamper's liver which raised a concern of abdominal bleeding and injury. Dr. Maxwell further testified, to a reasonable degree of medical certainty, that the fluid was the result of the motor vehicle accident. Therefore, the trial court did not err when it denied appellant's motion for directed verdict on this issue.
 {¶ 25} We now turn to appellant's claim that the trial court erroneously permitted the jury to consider attorney fees. Appellee's representative testified that Stamper received $30,000.00 from appellee for his injuries and Stamper testified that he paid a portion of that sum to his attorney. However, appellee did not provide payment to Stamper for attorney fees. Mr. Stamper's claim was based upon his lost wages, pain and suffering and medical bills and that is what appellee used as the basis to determine the value of Stamper's claim. Tr. 167-168. The fact that Stamper used some of that money to pay his attorney is irrelevant. Attorney fees were not an element of the damages that appellee considered or paid. Thus, the jury did not consider attorney fees when it determined damages. Accordingly, the trial court did not err when it denied appellant's motion for directed verdict on this issue.
 {¶ 26} For the foregoing reasons, appellant's second assignment of error is overruled.
 III {¶ 27} In the third assignment of error, appellant argues that the trial court should have directed a verdict in favor of appellant because appellee failed to produce evidence of a contract or obligation on appellant's part to pay the damages suffered by Stamper and that appellee was not entitled to equitable subrogation. In other words, appellant contends that appellee failed to produce sufficient evidence to entitle appellee to a right of subrogation. We disagree.
 {¶ 28} As stated in assignment of error II, the standard of review for the grant or denial of a motion for directed verdict is as follows: whether there was probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Sanek v.Duracote Corp. (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114. This is a question of law, not one of fact. Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141; Vosgerichian v.Mancini Shah Associates, et al. (Feb. 29, 1996), Cuyahoga App. Nos. 68931 and 68943, 1996 WL 86684.
 {¶ 29} There are three distinct kinds of subrogation: legal (equitable), statutory and conventional (contractural). BlueCross Blue Shield Mut. Of Ohio v. Hrenko, 72 Ohio St.3d 120,1995-Ohio-306, 647 N.E.2d 1358. The trial court sustained appellant's motion for directed verdict as to conventional (or contractual) subrogation and statutory subrogation. Specifically, the trial court found that appellee failed to provide proof that the contract of insurance between appellee and Stamper contained a subrogation clause and there was no applicable statutory right of subrogation. The trial court found that only an equitable (or legal) subrogation claim survived. Accordingly, the trial court's award of damages was premised upon an equitable subrogation claim.
 {¶ 30} Legal or equitable subrogation is a doctrine "under which, as a result of the payment of a debt by a person other than the principal debtor, there is a substitution of the former in the place of the creditor to whose rights he succeeds in relation to the obligation of the debtor, to the end that the burden of obligation be ultimately placed upon those to whom it primarily belongs, although in the recognition of the rights of others it may have been, for a time, borne by those who are only secondarily liable for the debt." Maryland Cas. Co. v. Gough
(1946), 146 Ohio St. 305, 315, 65 N.E.2d 858. Equitable subrogation entitles an insurer to all the rights and remedies of the insured against a third party if: (1) the insurer indemnifies the insured for a loss occasioned by the third party; and (2) the loss is covered by the insurance policy. Michigan Millers Mut.Ins. Co. v. Christian, 153 Ohio App.3d 299, 794 N.E.2d 68,2003-Ohio-2455, at ¶ 35; Tom Harrison Tennis Ctr., Ltd. v.Indoor Courts of Am., Inc., Warren App. No. CA2002-03-034, 2002-Ohio-7150, at ¶ 13.[2]
 {¶ 31} Medical payment subrogation has been enforced under the doctrine of equitable subrogation. In Allstate Ins. Co. v.LaCivita (Aug. 9, 1996), Portage App. No. 94-P-0118, 1996 WL 494800, the court adopted the rationale that "the equitable right of subrogation is the legal effect of payment, and inures to the insurer without any formal assignment or any express stipulation to that effect in the policy." Id. at 6 (citing State Farm Mut.Auto. Ins. Co. v. Scott (Dec. 20, 1993), Clinton App. No. CA93-05-013); In accord, Travelers Indemnity Co. v. Brooks
(1977), 60 Ohio App.2d 37, 38-39, 395 N.E.2d 494. In LaCivita,
the court held that because the insurer proved, through the testimony of the insured that it was her insurance company, that she made a claim for damages to the automobile, and that it paid the amount of damages to the vehicle, the doctrine of equitable subrogation was applicable.
 {¶ 32} We agree with the above cited decisions. Accordingly, we turn to the evidence to determine if appellee demonstrated an equitable claim. In this case, appellee presented testimony that Stamper had an automobile insurance policy from appellee, that Stamper made a claim for injuries sustained in the accident and that appellee paid for the damages arising from that injury. We find that appellee met its burden to prove an equitable subrogation claim.
 {¶ 33} For the foregoing reasons, appellant's third assignment of error is overruled.
 {¶ 34} The judgment of the Richland County Court of Appeals is affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] This opinion was rendered to a reasonable degree of medical certainty. Prior to asking this question, appellee's counsel asked Dr. Maxwell to provide all opinions to a reasonable degree of medical certainty. TR. 12. Dr. Maxwell agreed. Id.
[2] We note that principles of equitable subrogation do not override clear and unambiguous contractual provisions. N.Buckeye Edn. Council Group Health Benefits Plan v. Lawson
(2004),103 Ohio St.3d 188, 814 N.E.2d 1210.