[Cite as *Cobblestone Square II Co., Ltd. v. L&B Food Servs., Inc.*, 2011-Ohio-4817.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95968**

## COBBLESTONE SQUARE II CO., LTD.

PLAINTIFF-APPELLEE

vs.

## L&B FOOD SERVICES, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-697951 and CV-689779

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 22, 2011

**ATTORNEYS FOR APPELLANTS**

Mark G. Petroff
David A. Hamamey, II
Petroff & Associates L.L.C.
1288 Abbe Road
Elyria, OH   44035


**ATTORNEYS FOR APPELLEE**

Valerie L. Tolbert
Carnegie Management & Development Corp.
27500 Detroit Road
Suite 300
Westlake, OH   44145

Christopher J. Freeman
P.O. Box 401
Medina, OH 44258-0401

SEAN C. GALLAGHER, J.:

{¶ 1}   This is an appeal and cross-appeal from the judgment of the Cuyahoga County Court of Common Pleas in consolidated Case Nos. CV-689779 and CV-697951.   For the reasons stated herein, we affirm the decision of the trial court.

{¶ 2}   On November 11, 1999, Cobblestone Square II Co., Ltd. ("Cobblestone"), through its predecessor, Cobblestone Square Company, Ltd., entered a lease with L&B Food Services, Inc. ("L&B").   The principals, Barry and Lauren Keating, personally guaranteed the lease.   L&B, through the Keatings, opened and managed a Quiznos franchise.   L&B agreed

to lease the premises for five years with the option to renew for up to three additional five-year terms. The lease also included an exclusivity clause for which Cobblestone would not lease to another restaurant whose primary use is the sale of sub-type sandwiches. The terms of the lease allowed for other restaurants who sell "sub-type" sandwiches as long as that was not the primary product. We note there was no provision for liquidated damages for breach of the exclusivity clause nor any specific definition of what constitutes "primary use."

{¶ 3} Shortly after the L&B's Quiznos franchise opened, Cobblestone leased space to a Bellacino's restaurant in the same shopping center. Bellacino's sold pizza, salads, and grinders. The parties agreed that grinders are sub-type sandwiches. Sometime in 2000 and again in 2003, Quiznos Corporate and the Keatings, respectively, issued written notice to Cobblestone of a potential breach of the exclusivity clause pursuant to Section 24 ("landlord's default clause") of the lease because of Bellacino's presence. Bellacino's had been operating for less than one year at the time of the inquiry, so there was insufficient sales data to determine whether the primary product was pizzas, salads, or grinders. L&B and Quiznos dropped the issue until 2003, when the Keatings directly challenged Bellacino's primary product. Cobblestone responded to the Keatings' challenge by issuing written notice that Bellacino's was not primarily selling grinders and therefore no breach occurred. The Keatings never followed up on their 2003 inquiry either.

**{¶ 4}** The landlord's default clause, allegedly invoked by the 2000 and 2003 inquiries, contained terms that limited the damages available to L&B upon Cobblestone's default. Damages were limited to money damages or injunctive relief. Abating rent or terminating the lease were specifically excluded, and Cobblestone had 90 days to cure any breach.

**{¶ 5}** On September 19, 2005, L&B renewed the lease for another five-year term and amended the lease to include a provision that allowed L&B to abandon the lease if certain conditions were met. Section 4.C. of the amendment granted L&B a one-time right to terminate the lease within one year of the amendment if several conditions were met: (1) L&B could not be in default of the terms of the amendment; (2) Cobblestone has not signed a lease for a minimum of 45,000 square feet within the shopping center; (3) L&B's sales have not increased by a minimum of 20 percent, and L&B has provided quarterly sales report documentation to Cobblestone; and (4) L&B provided written notice to Cobblestone exercising its right to terminate no later than September 30, 2006. If all those conditions were met, L&B would have had ten days to vacate the premises and the lease would be terminated. If any one of the conditions were not met, the lease remained in full force and effect for the remaining term.

**{¶ 6}** In September 2006, L&B notified Cobblestone of its intent to invoke Section 4.C. of the amended lease. Rather than vacating the premises within ten days as required by

the term of the amended lease, however, L&B requested to convert the term lease into a month-to-month tenancy. Cobblestone did not, nor was it required to, respond to the proposed amendment. L&B remained in possession of the space and continued to pay rent, having failed to properly invoke Section 4.C. of the amended lease.

{¶ 7} In May 2008, L&B notified Cobblestone of its intent to vacate the premises, in part relying on the September 2006 letter. This time L&B ceased paying rent and did vacate the premises. Two months later, per the terms of the lease, Cobblestone issued a notice of default for failure to pay rent.

{¶ 8} In a race to the courthouse, L&B filed a complaint against Cobblestone, in Lorain County Court of Common Pleas, for breach of contract based on the allegation that Bellacino's presence violated the exclusivity clause of L&B's lease. Shortly thereafter, Cobblestone filed its action for breach of contract for unpaid rent, in Cuyahoga County Court of Common Pleas. The Lorain action was transferred to Cuyahoga County, and the cases were consolidated for trial. The trial court, after holding a bench trial, entered judgment in favor of Cobblestone on all claims, but limited Cobblestone's judgment to $3,514, representing two months' rent. The trial court found that Cobblestone failed to mitigate its damages. On L&B's claim, the trial court found no breach occurred and, in the alternative, L&B and the Keatings failed to provide evidence of damages.

{¶ 9}  L&B and the Keatings timely appealed the decision, raising three assignments of error.   Cobblestone timely cross-appealed, raising one assignment of error.   We will first address L&B and the Keatings' assignments of error, which provide as follows:

> **"I.   The trial court incorrectly found the primary use provision contained in L&B's lease was not violated when landlord continued to permit Bellacinos's [sic] to stay in this shopping center."**

> **"II.   The trial court incorrectly determined Keatings and L&B did not offer evidence of their damages as a result of Bellanico's [sic] being in the shopping center in violation of the primary use provision."**

> **"III.   The trial court abused its discretion in denying Keatings and L&B's motion for continuance."**

{¶ 10} We will address the assignments of error in reverse order.

{¶ 11} L&B and the Keatings' third assignment of error challenges the trial court's decision to deny a motion to continue the bench trial set for March 9, 2010.   L&B and the Keatings argue that they lacked notice of the March trial date.   On February 24, 2010, L&B and the Keatings missed a settlement-conference and were contacted by the court.   As the basis for a continuance, L&B and the Keatings claimed the lead trial counsel and one subpoenaed witness were unavailable for the March trial date.   Their third assignment of error is without merit.

{¶ 12} "The grant or denial of a motion for a continuance is a matter which is within the discretion of the trial court and will be reversed on appeal only if the trial court abused that discretion.   When determining whether that discretion has been abused, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to

the moving party." (Internal citations omitted.) *Ruble v. Cleveland Clinic Found.* (Oct. 16, 1997), Cuyahoga App. No. 71844. There is no bright-line test for determining whether a denial of a continuance violates due process. Id. Review of the trial court's decision depends on the totality of the circumstances. Id.

{¶ 13} Some factors to consider include the following: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [moving party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Internal citations and quotations omitted.) Id.

{¶ 14} In this case, the court originally set the bench trial for February 24, 2010. On December 24, 2009, the parties filed a joint motion to continue the trial, citing discovery issues. The trial court granted the continuance, converted the February trial date into a settlement conference, and reset the trial to March 9, 2010. L&B and the Keatings claim they never received the notices resetting the trial schedule, sent in both case numbers to both their attorneys. Rather, they claim to have only received the short cards that cancelled the original schedule, sent only in Case No. CV-689779. The lead trial attorney, Attorney

Petroff, for L&B and the Keatings on their claims, did not return from vacation until March 8, 2010. Cobblestone, being ready for the March 2010 trial, opposed the motion to continue.

{¶ 15} The trial court, in granting the joint motion to continue the original trial date, stated that no further continuances would be granted. Although L&B and the Keatings dispute receiving notice of that order, the reasons stated for the continuance were the absence of Attorney Petroff and a witness. L&B and the Keatings were represented by Attorneys Petroff and Hamamey. Attorney Hamamey was available and prepared for trial. See *Toledo v. Emery*, Lucas App. No. L-01-1361, 2002-Ohio-2694, ¶ 58 (noting that one of two trial attorneys for a party was available and ready for trial in affirming the trial court's decision to deny a continuance). The allegedly unavailable witness, James Foley, testified at the close of trial.

{¶ 16} More important, we adhere to the general maxim that a trial court acts and speaks only through its journal. *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.* (1986), 28 Ohio St.3d 118, 124, 502 N.E.2d 599. "Ohio courts have traditionally held that while some form of notice of a trial date is required to satisfy due process, an entry of the date of trial on the court's docket constitutes reasonable, constructive notice of that fact." Id.

{¶ 17} In this case, the trial court journalized the trial date and issued notice to the parties. It was incumbent upon the parties to monitor the docket, and no reason was given for that failure.

{¶ 18} We also note that L&B and the Keatings do not claim to have been prejudiced by the decision to go forward with trial. According to the record, Attorney Hamamey claims to have been notified of the ultimate trial date on February 24, 2010, 14 days prior to the trial date. Furthermore, he stated that he "adequately went forward preparing exhibit lists, witness lists, [and] issuing subpoenas" upon learning of the March 9th trial date. In light of that, the trial court correctly reasoned that everyone's availability, including the court's, outweighed any potential prejudice created by the absence of one of L&B and the Keatings' attorneys. The trial court did not abuse its discretion in denying the motion to continue the trial, and L&B and the Keatings' third assignment of error is overruled.

{¶ 19} L&B and the Keatings' second assignment of error challenges the trial court's conclusion that they failed to provide prima facie evidence of damages in support of their breach of contract claim. In light of that finding, the trial court found in favor of Cobblestone upon L&B and the Keatings' claim. Their second assignment of error is without merit. For the purposes of addressing this assignment of error, any reference to L&B will be a reference to L&B and the Keatings.

{¶ 20} "To succeed on a breach of contract claim, a party must prove the existence of a contract, that party's performance under the contract, the opposing party's breach, and resulting damages. In reviewing the trial court's decision, we apply the standard that judgments supported by competent, credible evidence in the record must not be reversed as being against the manifest weight of the evidence. In addition, we give deference to the trial court's findings." (Internal citation omitted.) *Povroznik v. Mowinski Builders, Inc.*, Cuyahoga App. No. 93225, 2010-Ohio-1669, ¶ 13. We are also mindful that the general principle in determining contract damages is to place the injured party in as good of a position as it would have been but for the breach. *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St.3d 436, 439, 453 N.E.2d 683.

{¶ 21} In this case, the trial court determined that L&B did not prove damages as a result of Cobblestone's leasing another store to a restaurant that allegedly sold sub-type sandwiches as its primary product. At trial, L&B sought two alternate theories of damages: the first being costs to open and maintain the Quiznos franchise, and the second being essentially lost profits from Bellacino's cannibalization of L&B's customers.

{¶ 22} In addressing L&B's first theory of damages, we must adhere to any limitation on damages agreed to in the lease. As discussed earlier, Section 24 of the lease agreement between L&B and Cobblestone limits L&B's recovery to money damages and/or injunctive

relief and further specifically excludes rent abatement or rescission of the lease.[1]  In other words, even if Cobblestone breached the exclusivity clause, under the terms of the contract, L&B was contractually obligated to maintain the lease and all rent payments.   The trial court, therefore, could not award L&B damages for the costs to open and operate the Quiznos franchise under the breach of contract theory.   L&B would incur those costs regardless of a breach of the exclusivity clause, and awarding such damages would put L&B in a better position than if no breach occurred.   If the exclusivity clause was a necessary condition of opening the Quiznos franchise, L&B should not have contractually limited the damages for landlord's breach in such a fashion.

{¶ 23} L&B's second theory on damages seeks, albeit implicitly, lost profits.   L&B further offered two forms of evidence of lost profits: those stemming from the general total losses from L&B's balance sheet and those measured through Bellacino's gross sales of sub-type sandwiches.

{¶ 24} "In order for a plaintiff to recover lost profits in a breach of contract action, the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty."  *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 521 N.E.2d 814, syllabus.   "[L]ost profits may be established with reasonable certainty either directly or

---

[1]  The pertinent portion of the clause provides the following: "In no event shall Tenant have the right to terminate this Lease or delay any obligations under this Lease including, but not limited to, Base Rent and Adjustments under Section 7.A and 7.B as a result of Landlord's default and Tenant's remedies shall be limited to damages and/or an injunction."

through an expert witness. Proof with mathematical precision is not required, nor need the proof be clear and irrefutable, but profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors without undue speculation." *Michigan Millers Mut. Ins. Co. v. Christian*, 153 Ohio App.3d 299, 312-313, 2003-Ohio-2455, 794 N.E.2d 68.

{¶ 25} L&B's first measure of lost profits — demonstrated by evidence of lost profits from L&B's balance sheet — is not appropriate. The only claim against Cobblestone is for breach of the exclusivity clause. The rationale behind the exclusivity clause is to limit competition. Cobblestone is not the insurer of L&B's business venture and is not contractually bound to cover all losses sustained by L&B upon the breach of any lease term, only those damages that result from the breach. *Mowinski Builders, Inc.*, 2010-Ohio-1669, at ¶ 13. In this case, the damages are those derived from the competition with Bellacino's sub-type sandwich sales. L&B's total business losses between 2000 and May 2008 do not establish or demonstrate compensable damages in this case. Bellacino's began operating approximately the same time L&B opened its Quiznos franchise. There is no baseline for comparing L&B's sales and, therefore, L&B's total losses cannot be used as indicators of Bellacino's effect on its business. Whether or not L&B was profitable as a company is also irrelevant to determining the amount of damages stemming from Cobblestone's alleged

breach. L&B could have been a profitable operation and still incurred compensable damages as a result of Bellacino's competition.

{¶ 26} The final and most important issue with the total losses is that L&B did not separate the losses caused by the alleged competition from those caused by the economy, the inability of Cobblestone to properly develop the shopping center, or the anchor-store Kmart's departure. In fact, Barry Keating testified that Kmart's departure caused lowered sales, but he was unable to identify the actual amount. Incidentally, those three reasons were among the reasons the Quiznos Corporate representative gave for the inability of L&B to meet the sales projections. Bellacino's presence was but one factor and, therefore, the evidence that L&B continually missed sales goals and failed to turn a profit cannot be used as an indicator of damages in this case without more analysis.

{¶ 27} In the alternative, L&B introduced a breakdown of Bellacino's sales from 2006 through 2009 by product category in an effort to prove damages through its competitor's gross sub-type sandwich sales. Defendant's Exhibit No. 2 introduced at trial lists Bellacino's total sales from 2000 through 2009, although the 2000 and 2009 categories were not complete years. The trial court found that L&B's damages were speculative. We agree.

{¶ 28} There is no evidence in the record that Bellacino's customers would have purchased from the Quiznos franchise absent Bellacino's, much less that L&B's franchise would have received, dollar-for-dollar, every sub-type sale in Bellacino's absence. On that

point, L&B argues that its gross sales would have matched Quiznos Corporate's initial gross sales expectations when adding Bellacino's gross sales of sub-type sandwiches to L&B's gross sales. Quiznos Corporate's representative expected L&B to generate $400,000 yearly in gross sales, rather than the average of $275,000 actually realized. According to L&B, Bellacino's gross sales of sub-type sandwiches totaled $200,000.[2]

{¶ 29} As mentioned before, Quiznos Corporate's representative also attributed the failure to meet sales goals to several other extraneous factors as well as the competition with Bellacino's. As with L&B and the Keatings' first measure of damages, total lost profits, their expected gross sales cannot be used as an indicator of damages in this instance when the witnesses established several factors responsible for their lost profits and were unable to identify the specific lost profits attributable to the competition alone.

---

[2] The $200,000 sub-type sandwich gross sale number is itself questionable, and the math stemming from the evidence offered does not support this argument. The $200,000 sales figure is apparently derived from attributing 50 percent of Bellacino's gross total sales of 3.2 million dollars over the eight-year period from 2001 through 2008 ((3.2 million * .5) / 8) to sub-type sandwich sales. (Deft. Exhibit 2.) No explanation or evidence from trial substantiates the 50 percent approximation. Bellacino's sales of grinders totaled $201,775.62 out of total sales of $502,736.91 for the 76 weeks, between 2006 and 2009, represented in L&B and the Keatings' exhibits 28-31. Sub-type sandwiches, therefore, represented an average of only 40 percent of Bellacino's gross sales; not the 50 percent as argued. Even if we accept L&B and the Keatings' estimation based on the 3.2 million dollars of gross sales, the gross sub-type sales is $160,000 ((3.2 million * .4) / 8) per year. We also note that the 76 weeks of sales data from Bellacino's is the only data that identifies the percentage of Bellacino's sub-type sales. However, if the 76 weeks of data is averaged over the three-year period it represents, it totals approximately $2,655 (201,775 / 76) per week of sub-type sandwich sales. Multiplied by the 52 weeks in a year, the total sub-type sales per year as shown through the evidence is even lower, approximately $138,060 per year.

{¶ 30} Barry Keating was the only witness to testify to any transference of sales from Bellacino's to L&B's Quiznos franchise. He testified that L&B did not expect to receive all Bellacino's sales, only 75 percent of the sub-type sandwich sales. There was no foundation for that statement, and it amounts to mere speculation — further highlighted by the fact that Barry Keating's specific answer to whether he expected 75 percent of Bellacino's sales was that it was "certainly a possibility." It is undisputed that Bellacino's could have cannibalized some sales from L&B's Quiznos franchise; however, no witness established how much with any degree of certainty, much less reasonable certainty.

{¶ 31} The evidence offered by L&B to establish damages, even if Cobblestone breached the lease, did not demonstrate damages with reasonable certainty. The trier of fact's determination that the evidence of damages was speculative and not proved with reasonable certainty is therefore not against the manifest weight of evidence. L&B's second assignment of error is overruled.

{¶ 32} Finding no error with the trial court's conclusion that L&B failed to prove damages, we need not address L&B and the Keatings' first assignment of error challenging the trial court's conclusion that Cobblestone did not breach the lease. Since L&B cannot establish damages, it failed to establish a prima facie claim for breach of contract, and whether the trial court erred by reading a percentage into the definition of "primary use" is immaterial to this appeal. L&B and the Keatings' first assignment of error is accordingly moot.

{¶ 33} Finally, Cobblestone's timely cross-appeal provides as follows: "The trial court erred in finding that Cobblestone had failed to properly mitigate its damages and in awarding damages for a two month period rather than for the balance of the lease term." The trial court granted judgment in favor of Cobblestone for two months' rent. Cobblestone sought the entire remaining lease term of $47,439.[3] Cobblestone advances two arguments in support of its assigned error. First, it claims L&B and the Keatings waived the affirmative defense of mitigation by failing to assert the affirmative defense in a responsive pleading. Second, it challenges the weight of evidence underlying the trial court's determination that Cobblestone's mitigation efforts were unreasonable by attacking the credibility and reliability of the witness and the evidence. For the following reasons, we find no merit to Cobblestone's sole assignment of error. We will address each of Cobblestone's arguments in turn.

{¶ 34} We agree with Cobblestone that mitigation of damages is an affirmative defense that, pursuant to Civ.R. 8(C), must be raised in a responsive pleading. *Oliver v. C.M.H.A.*, Cuyahoga App. Nos. 80347 and 80138, 2002-Ohio-5830, ¶ 11. It is undisputed that L&B and

---

[3] We note that Cobblestone's attempt to collect the full $47,439 is misplaced. Cobblestone was limited to seeking damages for the amount of rent owed as of the trial date as the lease did not contain an acceleration of rents clause and Cobblestone had a duty to mitigate its damages. *U.S. Bank Natl. Assoc. v. Gullotta*, 120 Ohio St.3d 399, 2008-Ohio-6268, 899 N.E.2d 987, ¶ 29-30; see, also, *Buckeye Fed. Sav. & Loan Assn. v. Olentangy Motel* (Aug. 22, 1991), Franklin App. No. 90AP-1409 (noting that a breach of an installment contract for nonpayment of one installment is not a total breach absent language in the contract to the contrary).

the Keatings failed to raise mitigation as an affirmative defense in their responsive pleading. However, Civ.R. 15(B) states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues."

{¶ 35} In the current case, Cobblestone did not object to the mitigation evidence being considered by the trial court at trial. Even if it had, the trial court had discretion to overrule any such objection and, if needed, allow Cobblestone additional time within which to prepare for the new arguments. Civ.R. 15(B). Cobblestone did not claim any prejudice to addressing the mitigation evidence at trial. The mitigation issue, therefore, was not improperly considered by the trial court, and Cobblestone's argument is without merit.

{¶ 36} In addressing Cobblestone's second argument, the "burden of proving a failure to mitigate damages lies with the party asserting the defense. A landlord is not required to use extraordinary efforts to find a new tenant or attempt the unreasonable or impracticable. Whether a landlord made reasonable efforts to mitigate damages is a question of fact to be resolved by the trier of fact." (Internal citations and quotations omitted.) *Oakwood Estates v. Crosby*, Cuyahoga App. No. 85047, 2005-Ohio-2457, ¶ 11. Judgments supported by competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence. *Shemo v. Mayfield Hts.*, 88 Ohio St.3d

7, 10, 2000-Ohio-258, 722 N.E.2d 1018, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.

{¶ 37} Cobblestone challenges the reliability and admissibility of Barry Keating's testimony that another company was ready, willing, and able to lease the premises two months after L&B departed. Barry Keating testified that another company's representative stated that Cobblestone was unwilling to lease out the premises without being paid for the two months of outstanding rent. While Cobblestone objected to Barry Keating relating what Cobblestone's representative stated, it did not object to Barry Keating relating what the other company's representative stated.

{¶ 38} The trial court relied on Barry Keating's testimony, regarding the other company's representations, to establish that Cobblestone failed to mitigate its damages when it unreasonably turned down the other company's application. Since the admission of such was not objected to, it "may properly be considered and given its natural probative effect as if it were at law admissible, the only question being with regard to how much weight should be given thereto." *State v. Petro* (1947), 148 Ohio St. 473, 76 N.E.2d 355, paragraph eight of the syllabus. The trial court did not therefore err in considering the evidence.

{¶ 39} Cobblestone also challenges the credibility of Barry Keating's statements regarding that other company's willingness to lease L&B's old store space. Generally courts are free to deem self-serving statements incredible. See *Thompson v. Dodson-Thompson*,

Cuyahoga App. No. 90814, 2008-Ohio-4710, ¶ 19. The converse is equally true. "[W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶ 40} In this case, the trial court deemed Barry Keating credible — despite not being present during Cobblestone and the other company's alleged negotiations — in relating the efforts another company went through to rent out the recently vacated store space. Although his testimony was self-serving, the trial court was in the best position to observe Barry Keating's credibility as he testified. Nothing in the record subverts the trial court's determination that Barry Keating was more credible than Cobblestone's representative on the mitigation issue.

{¶ 41} If his testimony is believed, Cobblestone improperly hindered the leasing of the space by requiring the other company to pay the back rent owed by L&B. The trial court's ruling is predicated on the fact that the other company intended to negotiate its own lease for

the empty space, rather than assume L&B and the Keatings' lease. Nothing in the record, or any arguments made, demonstrate otherwise. The nonbreaching party does not have a right to be made whole as a condition precedent to its efforts in mitigating damages. To hold otherwise would defeat the concept of mitigation altogether. Based on the foregoing, the trial court's determination that Cobblestone failed to take reasonable measures to relet the property was supported by competent, credible evidence. The trial court did not err by limiting Cobblestone's damages to two months of rent, and Cobblestone's sole assignment of error is overruled.

{¶ 42} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY